David D. Sohn, Esq. (Cal. Bar No. 221119)
david@sohnlegal.com
**SOHN LEGAL GROUP, P.C.**
20 Haight Street, Suite 101
San Francisco, California  94102
Telephone:	415-421-1300
Facsimile:	415-423-3455

Attorneys for Plaintiff
MARCEL SIELER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCEL SIELER, an individual,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>LUCID USA, INC. f/k/a ATIEVA USA, INC., a Delaware corporation; and DOES 1-20, inclusive,<br><br>　　　　　　Defendants. | Case No. 3:23-CV-00092<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.　**Breach of Contract**<br>2.　**Declaratory Relief** |

COMPLAINT FOR DAMAGES

Plaintiff MARCEL SIELER ("Plaintiff") alleges the following:

## INTRODUCTION

1. This breach of contract lawsuit is brought by Plaintiff who was formerly employed by Defendants LUCID USA, INC. f/k/a ATIEVA USA, INC. and DOES 1-20 (collectively, "Defendants"). Plaintiff was denied the benefits of a settlement agreement he entered into with Defendants on February 1, 2018. Specifically, Defendants failed to provide Plaintiff the opportunity to purchase 30,000 non-qualified stock options in a lawful and legitimate manner.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332. Plaintiff is a citizen of Germany and LUCID USA, INC. f/k/a ATIEVA USA, INC. is a corporation incorporated in the State of Delaware with a principal place of business in the State of California.

3. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in the United States District Court, Northern District of California pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

5. Plaintiff is an adult resident of Germany.

6. Defendant LUCID USA, INC. f/k/a ATIEVA USA, INC. ("LUCID") is a Silicon Valley company that manufactures electric vehicles. LUCID is a Delaware corporation with its principal place of business at 7373 Gateway Boulevard, Newark, CA 94560. Upon information and belief, LUCID is, and at all times relevant hereto has been, authorized to, and does, conduct business in the State of California.

7. The true names and capacities of DOES 1-20, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues such defendants by fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff will amend this complaint to show the true names, capacities, and involvement of DOES 1-20, inclusive, once they are ascertained. Plaintiff is informed, believes, and thereon alleges that each of the

defendants designated as a DOE is responsible in some manner for the events, happenings, and omissions described herein, and that Plaintiff's injuries and damages were proximately caused by said defendants. Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, each of the DOES 1-20, inclusive, was an agent, partner, affiliate, joint employer, joint venturer, owner, co-owner, employee, successor, predecessor, parent, and/or subsidiary of each of the remaining defendants, and each of them, was at all times acting within the purpose and scope of the applicable relationship.

8. There exists, and at all times herein mentioned there existed, a unity of interest and ownership, and control between LUCID and DOES 1-20 such that: (i) any individuality and separateness between LUCID and DOES 1-20 has ceased; (ii) LUCID and DOES 1-20 are *alter egos* of each other; (iii) the liability-limiting privileges under the law for LUCID and DOES 1-20 should be equitably disregarded; and (iv) the assets of DOES 1-20 should equitably be made available to satisfy the liability of LUCID arising from any monetary judgment to be entered upon the causes of action in this action.

## FACTUAL ALLEGATIONS

9. Plaintiff worked for Defendants as a Senior Technical Specialist, Lighting Pre-Development, from January 4, 2016 to January 24, 2017. Defendants terminated Plaintiff's employment on January 24, 2017.

10. Plaintiff filed a civil lawsuit against Defendants on June 1, 2017 alleging various wage-and-hour and fraud claims.

11. On February 1, 2018, Plaintiff and Defendants entered into a confidential settlement agreement and release (the "Settlement") to resolve Plaintiff's civil lawsuit. As part of the Settlement, Defendants agreed to give Plaintiff the opportunity to purchase 30,000 non-qualified stock options ("NSOs") at a strike price to be determined by Defendants' Board based on a valid 409A valuation. The Settlement required the purchase of these NSOs to be governed by the standard terms and conditions applicable to stock option grants issued by Defendants. Defendants agreed to supply these terms and conditions at the appropriate time.

12. On October 10, 2018, six months after the execution of the Settlement, Plaintiff contacted Defendants to ask whether a 409A valuation occurred. News reports at around that time indicated that Defendants obtained $1 billion in new funding from Saudi Arabia's sovereign wealth fund. Plaintiff stated that he wanted to know what strike price was determined by Defendants' Board if a 409A valuation was performed. Plaintiff also asked for a copy of the terms and conditions applicable to the 30,000 NSOs that he was entitled to purchase pursuant to the terms of the Settlement.

13. Defendants informed Plaintiff that they hoped to have 409A valuation within the "next few weeks."

14. On November 15, 2018, Plaintiff contacted Defendants to ask whether a 409A valuation occurred. Defendants replied that they had not. However, Defendants informed Plaintiff that they believed a new 409A valuation would be approved by their Board at the end of the month. Defendants informed Plaintiff that the last 409A valuation occurred in June 2016.

15. On December 17, 2018, Plaintiff contacted Defendants to ask whether a 409A valuation occurred. Defendants replied that they had not.

16. On January 22, 2019, Plaintiff contacted Defendants again to ask whether a 409A valuation occurred. Defendants replied that they had not.

17. On February 25, 2019, Defendants informed Plaintiff that a 409A valuation had finally been completed and was awaiting Board approval. Defendants did not provide a timeline of when this approval would occur, however.

18. Three months later, on May 28, 2019, Defendants informed Plaintiff that a strike price for Plaintiff's options had been established. The strike price was $2.19. Defendants also informed Plaintiff that he had to be "re-engaged" for a single day because options could only be provided to current employees/contractors. Defendants informed Plaintiff that they would provide him with a contractor agreement to review.

19. On June 5, 2019, Defendants delivered to Plaintiff a Professional Services Agreement, a Notice of Share Option Grant, and the 2014 Share Plan Option Agreement. Despite

3
COMPLAINT FOR DAMAGES

taking 15 months after the Settlement to perform a 409A valuation and to establish a strike price, Defendants requested Plaintiff to execute the Notice of Share Option Grant and the Professional Services Agreement *immediately* to trigger a 90-day window for Plaintiff to exercise his options.

20. Plaintiff questioned Defendants on whether the Professional Services Agreement and the Notice of Share Option Grant needed to be executed immediately. Plaintiff pointed out that the Settlement did not mention anything about when his options needed to be exercised.

21. On August 2, 2019, Defendants delivered to Plaintiff another Professional Services Agreement and Notice of Share Option Grant. Defendants then unilaterally imposed a deadline of 20 days from August 2, 2019 to sign these documents. Defendants informed Plaintiff that upon the expiration of this 20-day period, they no longer had any obligations to provide Plaintiff with an opportunity to exercise his options. According to Defendants, upon the expiration of this 20-day period, their obligations under the Settlement were complete.

22. Defendants explained that if Plaintiff signed the Professional Services Agreement and the Notice of Share Option Grant, the Vesting Commencement Date for the options would be the date of his signature. Defendants explained that the Professional Services Agreement would be effective for one day only, *i.e.* the day he signed the Professional Services Agreement. Defendant further explained that Plaintiff would have 90 days from the day he signed the Professional Services Agreement to exercise his options. According to Defendants, certain regulations required the imposition of these requirements.

23. Plaintiff declined to sign the Professional Services Agreement. Plaintiff declined to sign the Professional Services Agreement because he did not feel comfortable signing what he considered to be a "sham" agreement. At no point did Defendants ever ask Plaintiff to provide *bona fide* professional services. At no point did Defendants ever discuss what professional services they needed from him. The fact of the matter is, Defendants never intended for Plaintiff to serve as a contractor. Defendants never intended to have Plaintiff provide them with *bona fide* professional services under the circumstances. By asking Plaintiff to sign the Professional Services Agreement, Defendants were attempting to make it appear on paper as if they were

legitimately issuing options to Plaintiff as compensation for his professional services when in reality they were not.

24. Because Plaintiff declined to sign the Professional Services Agreement for the reasons described above, he also declined to sign the Notice of Share Option Grant. Plaintiff, however, informed Defendants that he "reserves any all rights to do so in the future."

25. Under the terms of the Settlement, Defendants had an obligation to provide Plaintiff with an opportunity to purchase 30,000 NSOs in a legitimate and lawful manner. Defendants failed to do so. Defendants insisted on Plaintiff signing a sham agreement in the form of the Professional Services Agreement. Defendants had no qualms violating securities laws and placing Plaintiff at risk of doing the same.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Contract**

26. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

27. On February 1, 2018, Plaintiff and Defendants entered into a confidential settlement agreement and release (the "Settlement") to resolve Plaintiff's civil lawsuit against Defendants alleging various wage-and-hour and fraud claims.

28. Plaintiff performed all, or substantially all, of the obligations that the Settlement required of him.

29. Defendants, however, failed to provide Plaintiff with an opportunity to purchase 30,000 NSOs in a legitimate and lawful manner.

30. As a direct result of Defendants' conduct, Plaintiff incurred significant financial losses in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
**Declaratory Relief**

31. Plaintiff re-alleges and incorporates by reference the allegations contained in the

paragraphs above as if fully set forth herein.

32. An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties. Plaintiff contends Defendants failed to provide him with an opportunity to purchase 30,000 NSOs as required under the terms of the Settlement in a legitimate and lawful manner. Defendants, on the other hand, contend that they did.

33. Plaintiff seeks a judicial determination as to whether Defendants provided Plaintiff with an opportunity to purchase 30,000 NSOs as required by the Settlement in a legitimate and lawful manner. A judicial determination of this controversy is necessary and appropriate. This will determine whether Defendants complied with all of their obligations under the Settlement.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for relief as follows:

1. A declaration that Defendants breached the Settlement;
2. An award of damages to be paid by Defendants for the causes of action alleged herein;
3. An award of costs and expenses, including reasonable attorneys' fees and expert fees, pursuant to the Settlement, or as otherwise permitted by law;
4. An award of pre-judgment and post-judgment interest, as provided by law; and
5. All such other relief the Court deems just, necessary, and proper.

DATED: January 9, 2023                    SOHN LEGAL GROUP, P.C.


By: _____/s/ David D. Sohn_____
        DAVID D. SOHN

Attorneys for Plaintiff
MARCEL SIELER